**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1989
_____

JOSE DAVID LAINEZ BUESO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. A220-473-214)
Immigration Judge:  Richard Bailey
_____

Argued June 9, 2026
_____

Before:  CHAGARES, Chief Judge, RESTREPO and MONTGOMERY-REEVES,
Circuit Judges

(Filed: August 3, 2026)


Alicia M. Barry  [ARGUED]
Jennifer Campos
Erica Hashimoto
John H. Peng
Georgetown University Law Center
600 New Jersey Avenue NW, Suite 312
Washington, DC 20001

    Counsel for Petitioner

Alexa Perlmutter  [ARGUED]
Thankful T. Vanderstar
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

  Counsel for Respondent

————————

OPINION*

————————

CHAGARES, Chief Judge.

Jose David Lainez Bueso petitions for review of an order by the Board of Immigration Appeals ("BIA"), which dismissed his appeal from an Immigration Judge's ("IJ") order denying asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

I.[1]

Lainez Bueso is a native and citizen of Honduras who entered the United States in 2019. He received a Notice to Appear in 2024, admitted removability, and applied for asylum, withholding of removal, and CAT protection, claiming a fear of harm by MS-13 gang members in Honduras.

Lainez Bueso appeared pro se at his hearing. The IJ informed him of his burden

---

* This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

[1] We write for the parties and therefore recite only those facts pertinent to our decision.

2

of proof, reviewed the documentary evidence he had submitted, and described the procedures that would be followed. Lainez Bueso then testified in support of his claims. He stated that he had worked for American cruise ships for periods of six months at a time, beginning in about 2011. He testified that "it's very dangerous when you work making dollars and you go back to" Honduras, and that "working for American companies is very dangerous because the gangs realize that." Administrative Record ("AR") 146. He described episodes in 2012, 2014, and 2019, where gang members robbed and assaulted him shortly after he returned from his work abroad. After the first two incidents, gang members extorted him for a time but eventually left him alone.

Apart from these three episodes, Lainez Bueso testified that gang members killed two of his brothers. His brother Edwin had worked for a public transportation company, and his brother Oscar was a delivery driver. He believes they were both killed by gangs for failing to pay extortion money.

Lainez Bueso testified that he fears returning to Honduras because he would be perceived as having money because he came from the United States. He also testified to a fear that, like a few of his friends, he would be deported to Honduras and "end up dead." AR 172.

The IJ found Lainez Bueso credible but concluded that he was ineligible for asylum because he applied more than a year after his arrival.[2] As to his withholding claim, the IJ found that the attacks he experienced were based on a perception that he had

---

[2] Lainez Bueso does not challenge the IJ's disposition of his asylum claim.

money after working abroad. The IJ determined that Lainez Bueso's testimony could support his membership in particular social groups ("PSG") based on perceived wealth, being a deportee, or both, but that these PSGs would not be cognizable for withholding of removal purposes because they are too broad and amorphous. The IJ therefore concluded that Lainez Bueso did not establish past persecution or a clear probability of future persecution on account of a protected ground. The IJ also denied Lainez Bueso's CAT claim, concluding that he did not establish that he more likely than not would face torture if he were to return to Honduras.

The BIA adopted and affirmed the IJ's decision. It also wrote separately to address Lainez Bueso's arguments on appeal, including the probability of future persecution on account of his membership in a PSG based on work on American cruise ships and the likelihood that he would face torture in Honduras. As for a PSG based on cruise ship work, the BIA observed that Lainez Bueso did not present that PSG to the IJ in the first instance and, under Matter of W-Y-C- & H-O-B-, 27 I. & N. Dec. 189, 192–93 (BIA 2018) ("W-Y-C-"), the BIA will not consider a PSG presented for the first time on appeal. The BIA then went on to observe that, as the IJ had found, gang members targeted him because they believed he had money, not because of how he earned that money. As for CAT protection, the BIA noted that the record did not contain evidence that Lainez Bueso would be specifically singled out for torture. This timely petition for

4

review followed.[3]

## II.[4]

### A.

To qualify for withholding of removal, Lainez Bueso was required to establish that he more likely than not would suffer persecution on account of a protected ground — such as membership in a PSG — if he were to be removed to Honduras.  See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 340, 348–49 (3d Cir. 2008).  While a showing of past persecution is not required, such a showing would entitle him to a rebuttable presumption that he will face persecution in the future.  See Saban-Cach v. Att'y Gen., 58 F.4th 716, 724 (3d Cir. 2023).  Findings concerning past and future persecution are reviewed under the deferential substantial evidence standard.  Doe v. Att'y Gen., 956 F.3d 135, 140 (3d Cir. 2020).  We therefore will not disturb such findings unless any reasonable adjudicator would be compelled to reach a contrary conclusion.  Id.

The IJ and BIA rejected Lainez Bueso's withholding of removal claim because he did not establish persecution on account of membership in a cognizable PSG.[5]  Lainez Bueso bore the burden of showing that the PSG is:  (1) composed of members who share

---

[3] Lainez Bueso was represented on appeal by students from the Georgetown University Law Center Appellate Litigation Program.  We express our gratitude to the students and their advisors for their commendable pro bono service in this matter.

[4] We have jurisdiction to review the final order of removal pursuant to 8 U.S.C. § 1252(a)(1).  Because the BIA adopted the IJ's decision and supplied additional reasoning, we review both decisions.  Hashmi v. Att'y Gen., 531 F.3d 256, 259 (3d Cir. 2008).

[5] The IJ also considered whether relief was warranted based on his political opinion, but Lainez Bueso has abandoned the political persecution claim.

5

a common immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question. S.E.R.L. v. Att'y Gen., 894 F.3d 535, 547 (3d Cir. 2018).

Lainez Bueso does not challenge the IJ's determination that the PSGs it considered — based on perceived wealth and being a deportee — are not cognizable. Instead, he argues that the IJ erred by failing to articulate and develop the record. The Government points out that the IJ asked Lainez Bueso over 160 questions at the hearing. Lainez Bueso counters that the IJ did not, however, articulate and develop an additional PSG comprised of Hondurans who worked on American cruise ships. We are not persuaded by this argument.

Our Court has held that, in the context of a failure to provide corroborating evidence, an IJ has a duty to develop the record on dispositive issues. Toure v. Att'y Gen., 443 F.3d 310, 325 (3d Cir. 2006). Lainez Bueso argues that we should expand the IJ's duty as the Court of Appeals for the Fourth Circuit has done in Quintero v. Garland, 998 F.3d 612, 628–30 (4th Cir. 2021). That court held that an IJ's duty to develop the record includes a duty to help pro se petitioners articulate a PSG and elicit facts to support it. Id.

We need not decide whether to adopt Quintero as Lainez Bueso advocates. That is because we agree with the Government that, under any formulation of an IJ's duty to develop the record, the IJ discharged that duty appropriately here. We reach this conclusion for three reasons.

6

First, the IJ conducted the hearing in a procedurally fair and reasonable manner. The IJ explained the applicable law and burden, asked numerous questions relevant to possible PSGs, and articulated three PSGs that are plausible in light of Lainez Bueso's testimony. See 8 C.F.R. § 1240.10(a)(4) (setting forth an IJ's obligations in a removal hearing); Aquino v. Att'y Gen., 53 F.4th 761, 768 (3d Cir. 2022) (observing that an IJ did not fail in her duty to develop the record where the government's lawyers asked "plenty of questions" and the petitioner did not identify additional facts that could have emerged to change the proceeding's outcome); Leslie v. Att'y Gen., 611 F.3d 171, 181 (3d Cir. 2010) (holding that due process ensures immigration petitioners a fundamentally fair removal hearing).

Second, contrary to Lainez Bueso's argument, the record does not support a claim that Lainez Bueso was attempting to assert a PSG based on cruise ship employment. Lainez Bueso suggested repeatedly that the problems he faced were due to the gangs' perception that he had earned money while working abroad, and in response to the IJ's several open-ended questions asking what he fears, Lainez Bueso did not present concerns specific to cruise ship employment.

Third, Lainez Bueso suffered no prejudice for the purported failure to articulate and develop a cruise ship PSG because such a PSG would not have entitled him to relief. See Aquino, 53 F.4th at 767–68 (requiring a showing of prejudice). A PSG based on cruise ship employment likely is not cognizable, as such a group is amorphous and therefore not sufficiently particular, and we also question whether cruise ship

7

employment is an immutable characteristic.[6]  See S.E.R.L., 894 F.3d at 552; Matter of

Acosta, 19 I. & N. Dec. 211, 234 (BIA 1985).  But even if the PSG is cognizable, given

the IJ's finding that Lainez Bueso's past harm was based on "a perception that he had

money after working abroad," Appendix 10, he would have been unable to establish a

nexus between the harm he experienced and membership in a PSG based on cruise ship

employment.[7]  See Thayalan v. Att'y Gen., 997 F.3d 132, 142 (3d Cir. 2021).

For these reasons, we conclude that the IJ did not err by declining to articulate and

develop the record as to a PSG comprised of Hondurans who worked on American cruise

ships.

Lainez Bueso also claims that the BIA committed an error of law by relying on W-

Y-C-.  In that opinion, the BIA declined to consider a PSG that was presented for the first

time on appeal.  27 I. & N. Dec. at 193.  Lainez Bueso contends that the BIA must

consider a PSG presented for the first time on appeal in cases where a petitioner is pro se

and the IJ has failed to adequately develop the record.  Yet the IJ adequately developed

the record here, so we need not consider whether W-Y-C- should apply in cases where an

---

[6] Lainez Bueso frames the PSG as concerning only past cruise ship employment on the theory that one cannot change one's employment history.  See Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 595 (3d Cir. 2011) (recognizing that status as a former policeman is an immutable characteristic).
[7] Lainez Bueso claims that the BIA engaged in improper factfinding by determining that the record does not support the existence of a nexus between his cruise ship employment PSG and any harm.  We disagree.  The BIA appropriately relied on the IJ's finding that the gangs targeted Lainez Bueso because they believed he had money.  See 8 C.F.R. § 1003.1(d)(3)(i).

IJ has not met that duty. We therefore perceive no error in the BIA's reliance on W-Y-C.[8]

B.

To receive CAT protection, Lainez Bueso was required to demonstrate, among other things, that he more likely than not would be tortured if removed to Honduras. See Gomez-Zuluaga, 527 F.3d at 349. Our Court has set forth two steps for evaluating the likelihood of torture: first, the agency must determine what harm Lainez Bueso would face if he were to return to Honduras, and second, it must consider whether that harm amounts to torture. Myrie v. Att'y Gen., 855 F.3d 509, 516–17 (3d Cir. 2017). The prediction about what is likely to happen upon removal is a finding of fact that we review for substantial evidence, while the assessment of whether what is likely to happen amounts to torture is a legal conclusion that we review de novo. Id.

The IJ made predictive factual findings based on Lainez Bueso's past experiences. The IJ found that, while Lainez Bueso may be approached by gang members for money in the future as he was in the past, he would not be seriously physically or mentally harmed. This finding is supported by substantial evidence, as Lainez Bueso testified that, although he was assaulted, extorted, and harassed in the past, each incident eventually ended without serious harm.

---

[8] Lainez Bueso argues in the alternative that W-Y-C- should not have been applied to him because he presented his cruise ship employment PSG to the IJ, in substance if not in name. We disagree. As we have already observed, Lainez Bueso did not present concerns specific to cruise ship employment when he responded to the IJ's open-ended questions about the harm he fears in Honduras.

Lainez Bueso argues that his CAT claim should prevail because the IJ disregarded other relevant evidence of torture, including the murders of his friends after they were deported to Honduras and the Honduran human rights report. While Lainez Bueso is correct that the IJ did not expressly discuss that evidence, such evidence does not compel a conclusion that Lainez Bueso would more likely than not suffer torture if he were to return to Honduras. See Alexander-Mendoza v. Att'y Gen., 55 F.4th 197, 207 (3d Cir. 2022) (observing that a failure to consider detracting evidence does not justify setting aside a finding unless the evidence would compel a reasonable adjudicator to reach a contrary conclusion). His challenge to the agency's denial of his CAT claim therefore lacks merit.

## III.

For the foregoing reasons, we will deny the petition for review.